**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LOUIS MENDY, | : | Civil No. 1:26-CV-01685 |
| Petitioner, | : | |
| v. | : | |
| ATTORNEY GENERAL OF THE U.S., *et al.*, | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner Louis Mendy ("Mendy"). (Doc. 11.) Mendy argues that he is being wrongfully detained in violation of 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). For the reasons that follow, the court will deny Mendy's petition.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Mendy alleges that he is a native and citizen of France. (Doc. 13-2, p. 3.)[1] On March 3, 1994, Mendy entered the United States at JKF Airport, New York, as a nonimmigrant visitor with authorization to remain until June 2, 1994. (Doc. 13-3, p. 4.)

Between 1998 and 2000, Mendy was arrested four times in New York City and convicted of numerous counts of trademark counterfeiting, assault in the 3rd

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

degree, and resisting arrest. (*Id.*) His sentences ranged from conditional discharges to 3 days incarceration. (*Id.*) Mendy did not depart the United States and was taken into immigration custody on December 14, 2004. (*Id.*) On December 17, 2004, Mendy was issued a notice of intent to issue a final administrative order because he violated the conditions of his admission and remained in the United States longer than authorized. (*Id.*) On December 22, 2004, Mendy was issued a visa waiver program violator final administrative removal order. (*Id.*) From the records provided to the court, it appears that Mendy was continued on conditions of release.

Mendy reported as required under his order of supervision on December 9, 2025, was informed that he had an outstanding removal order and then arrested. (*Id.* at 3.) He was processed and served with a notice of revocation of release. (Doc. 13-4.)

Beginning on December 16, 2025, immigration officials started requesting copies of Mendy's identity documents from France, which included contacting the French Embassy and communicating with the Deputy Consul Head of Chancery. (Doc. 13-2, p. 4.) It was reported that Mendy was born in Saint-Denis, an overseas department and region of France, but does not have any French documents. (*Id.*) The Deputy Consul was to obtain a birth certificate from Saint-Denis to confirm citizenship and then immigration officials would obtain a travel document request

for removal of Mendy. (*Id.*) Immigration officials followed up with French officials every month from January 2026 through May 2026, with varying updates on the status of Mendy's birth certificate and citizenship verification. (*Id.* at 4–5.)

On June 1, 2026, immigration officials located a marriage certificate and prior immigration file where Mendy stated that he is from Senegal, not France. (*Id.* at 5.) The same immigration file contained an application for a social security card from 1994 wherein Mendy stated he was born in Saint Denis. (*Id.*) The same day, immigration officials sent a travel document request ("TDR") to Senegal to request assistance with removal. (*Id.*) The TDR was sent to the Senegalese consulate on June 3, 2026. (*Id.*) Immigration officials continued to follow up with Senegal and were advised on July 31, 2026, that Senegal would not issue travel documents because Mendy is from Cape Verde, not Senegal. (*Id.*) That day, immigration officials requested assistance with travel documents for Mendy from Cape Verde. (*Id.*)

Mendy had a nationality verification interview with the Consulate General of Senegal on August 12, 2026, at which time he stated he is not a citizen of Senegal. (Doc. 16-1, p. 2.) Mendy again stated he is a citizen of France. (*Id.*) On August 17, 2026, the Consulate General of Senegal notified immigration officials they do not have sufficient evidence to establish that Mendy is a citizen of Senegal.

(*Id.*) On August 27, 2026, immigration officials began searching for a third country removal option for Mendy. (*Id.*) That search is pending. (*Id.*)

On June 18, 2026, Mendy filed a petition for writ of habeas corpus requesting release from detention against multiple individuals, including Jessica Sage, Warden of FCI Lewisburg ("Respondents").[2] (Doc. 1.) As ordered by the court, Mendy filed a signed petition on July 31, 2026. (Doc. 11.) Respondents filed a response on August 13, 2026, and Mendy filed a traverse on August 31, 2026. (Docs. 13, 14.) In response to the court's order requesting a status update on Mendy's reasonable likelihood of removal, Respondents filed a status report on October 21, 2026. (Doc. 16.) Thus, this petition is ripe for review.

## STANDARD OF REVIEW AND JURISDICTION

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of habeas corpus when an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." Claims related to an immigration detainee's request for release from confinement must be brought as a habeas petition as these "claims fall within the 'core' of the writ of habeas corpus."

---

[2] Respondents submit that the only proper respondent is Jessica Sage because she is the Warden of FCI Lewisburg. (Doc. 13, p. 13.) In this case, consistent with *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), Petitioner has named the Warden as a respondent. *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.") Because Petitioner has named a proper respondent, the court does not deem it necessary to determine whether the other named Respondents should be dismissed.

*Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167 (2022)). Jurisdiction for "core habeas petitions . . . lies in only one district: the district of confinement." *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted). Mendy is detained at FCI Lewisburg, which is within the Middle District of Pennsylvania. *See* 28 U.S.C. § 118(b).

## DISCUSSION

Mendy initially argues that his detention violates Section 1231(a), the Fifth Amendment Due Process Claus, and the INA.[3] (Docs. 11, 14.) He asserts that his detention is unreasonably prolonged beyond the presumptively reasonable six-month period in violation of *Zadvydas*, 533 U.S. 678. (Docs. 11, 14.) Mendy requests his immediate release from custody. (Doc. 11, p. 7.)

In opposition, Respondents argue that Mendy is lawfully detained under Section 1231(a). (Doc. 13, pp. 13–17.) They submit that Mendy has only been in custody approximately eight months and he cannot demonstrate that he will not be removed within the reasonably foreseeable future. (*Id.*) Additionally, Respondents have been actively seeking travel documents throughout Mendy's time detained. (*Id.*)

---

[3] Mendy appears to set forth a variety of other claims in his petition that are not properly brought in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Thus, the court will not discuss those claims herein.

Section 1231(a) "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Section 1231(a)(1)(A) provides that, following entry of a final order of removal, the United States generally must effectuate the noncitizen's removal during a 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A). The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to the Board of Immigration Appeals was either taken and ruled upon or the time to appeal expired); (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order; or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement. *See id.* § 1231(a)(1)(B).

Detention is mandatory during this first 90 days. *Id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)). Following expiration of the 90-day removal period, certain noncitizens "may" be detained. *Arteaga-Martinez*, 596 U.S. at 578–79 (quoting 8 U.S.C. § 1231(a)(6)). How long a noncitizen may be detained pursuant to Section 1231(a)(6) following the 90-day removal period has been the subject of considerable litigation.

In *Zadvydas*, the Supreme Court held that Section 1231(a)(6) "does not permit indefinite detention," but rather "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. According to *Zadvydas*, a period reasonably necessary to bring about a noncitizen's removal from the United States is presumptively six months. *Id.* at 701. Thus, noncitizens detained under Section 1231(a)(6) past the six-month presumptively-constitutional period may bring a due process challenge to their continued detention should that detention become prolonged and potentially unlawful. *See Zadvydas*, 533 U.S. at 699–701. If the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701; *see also* 8 C.F.R. §§ 241.4, 241.13 (establishing agency procedures for determining whether noncitizens detained under 1231(a) past 90-day removal period should be released on supervision or remain in detention). The determination of what constitutes the reasonably foreseeable future shrinks as the period of confinement increases. *Id.*

Here, there no dispute that Mendy has a final order of removal and that the presumptively reasonable six-month period began on December 9, 2025. Thus, Mendy has been detained for approximately ten months. The court acknowledges that this passes the presumptively-constitutional threshold, but finds that Mendy

fails to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Mendy has not identified any reason, other than removal has not yet occurred, to believe he will not be removed in the reasonably foreseeable future. Rather, Respondents have presented evidence that they are actively working to find documentation of Mendy's country of citizenship and a third-party country for removal. Accordingly, the court will deny Mendy's petition.

## CONCLUSION

For these reasons, the court will deny Mendy's petition for writ of habeas corpus. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: October 26, 2026